1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

STACY W.,

     Plaintiff,

 v.

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

Case No. 3:19-cv-05940

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of Defendant's denial of her

applications for disability insurance ("DIB") and supplemental security income ("SSI")

benefits.

The parties have consented to have this matter heard by the undersigned

Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule

MJR 13. For the reasons set forth below, the undersigned agrees that the ALJ erred,

and the ALJ's decision is reversed and remanded for further proceedings.

## I.   ISSUES FOR REVIEW

1. Did the ALJ err in evaluating the medical opinion evidence?
2. Did the ALJ properly assess Plaintiff's symptom testimony?
3. Did the ALJ err by not evaluating lay witness statements?

1

2          II.        BACKGROUND

3          Plaintiff filed applications for DIB and SSI in 2012 and 2015, which were denied
upon initial review and on reconsideration. AR 15, 100.

4          Plaintiff filed new applications for DIB and SSI on July 19, 2016, alleging in both

5   applications a disability onset date of January 1, 2012. AR 15, 249-57, 258-64. Plaintiff's

6   applications were denied initially and upon reconsideration. AR 15, 165-73, 176-82,

7   183-89. ALJ R.J. Payne held a hearing on August 10, 2018. AR 37-96. On October 24,

8   2018, the ALJ issued a decision finding that Plaintiff was not disabled. AR 12-30. On

9   July 30, 2019, the Social Security Appeals Council denied Plaintiff's request for review.

10  AR 1-6.

11         Plaintiff seeks judicial review of the ALJ's October 24, 2018 decision. Dkt. 4.

12         III.       STANDARD OF REVIEW

13         Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

14  denial of Social Security benefits if the ALJ's findings are based on legal error or not

15  supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874

16  F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a

17  reasonable mind might accept as adequate to support a conclusion.'" *Biestek v.*

18  *Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

19         IV.        DISCUSSION

20         In this case, the ALJ found that Plaintiff had the severe, medically determinable

21  impairments of obesity, migraine headaches, bipolar disorder, anxiety, and post-

22  traumatic stress disorder. AR 18. The ALJ also found that Plaintiff had a range of non-

23  severe and non-medically determinable impairments. AR 18-19.

24

25

1    Based on the limitations stemming from Plaintiff's impairments, the ALJ found

2    that Plaintiff could perform a reduced range of light work. AR 21. Relying on vocational

3    expert ("VE") testimony, the ALJ found that Plaintiff could not perform her past work, but

4    could perform other light, unskilled jobs; therefore the ALJ determined at step five of the

5    sequential evaluation that Plaintiff was not disabled. AR 28-30, 88-92.

6         A.   Whether the ALJ properly evaluated the medical opinion evidence

7         Plaintiff contends that the ALJ erred in evaluating the opinions of examining

8    psychologists William Weiss, Ph.D., and Todd Bowerly, Ph.D., the two medical experts

9    who testified at the hearing, James McKenna, M.D. and Colette Valette, Ph.D., and non-

10   examining state agency consultant Bruce Eather, Ph.D. Dkt. 12, pp. 3-12.

11        In assessing an acceptable medical source – such as a medical doctor – the ALJ

12   must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of

13   either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

14   1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v. Bowen*,

15   849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is

16   contradicted, the opinion can be rejected "for specific and legitimate reasons that are

17   supported by substantial evidence in the record." Lester, 81 F.3d at 830-31 (citing

18   *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d

19   499, 502 (9th Cir. 1983))

20        1.   Dr. Weiss

21        Psychologist Dr. Weiss examined Plaintiff twice for the Washington Department

22   of Social and Health Services ("DSHS").

23

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 3

1

2      Dr. Weiss first examined Plaintiff on August 30, 2016. AR 653-60. Dr. Weiss'

3  evaluation consisted of a clinical interview, a mental status examination, a review of the

4  available medical record, and psychological testing. Based on this evaluation, Dr. Weiss

5  opined that Plaintiff would have a range of moderate and severe work-related mental

   limitations, and that Plaintiff's overall degree of limitation would be severe. AR 655.

6      Dr. Weiss examined Plaintiff again on June 26, 2018. AR 1551-55. Dr. Weiss'

7  evaluation consisted of a clinical interview, a mental status examination, and a review of

8  the available medical record. Dr. Weiss again opined that Plaintiff would have a range of

9  moderate and severe mental limitations, and that Plaintiff's overall degree of limitation

10 would be severe. AR 1552-53. Dr. Weiss recommended a protective payee due to

11 mismanagement of funds. AR 1553. Dr. Weiss noted that Plaintiff reported auditory

12 hallucinations, and paranoid delusional ideation. AR 1554. He also opined that "[c]lient's

13 insight and judgment appear significantly impaired by delusions and hallucinations". AR

14 1555.

15     The ALJ assigned "little weight" to Dr. Weiss' opinions, reasoning that: (1) they

16 were check box forms that contained little information to support the degree of limitation

17 assessed; (2) the limitations assessed by Dr. Weiss were based almost entirely by

18 Plaintiff's subjective reports; (3) the severe limitations assessed by Dr. Weiss were

19 inconsistent with contemporaneous treatment notes, intact mental status examination

20 findings, and the opinions of Dr. Valette and the non-examining state agency

21 consultants; and (4) Plaintiff made several inconsistent statements to Dr. Weiss. AR 27-

22 28.

23

24

25

1

2

3

4

5

6

7

Regarding the ALJ's first reason, an ALJ may "permissibly reject[ ] ... check-off reports that [do] not contain any explanation of the bases of their conclusions." *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012) (internal quotation marks omitted) (quoting *Crane v. Shalala,* 76 F.3d 251, 253 (9th Cir.1996)). Yet, "opinions in check-box form can be entitled to substantial weight when adequately supported." *Neff v. Colvin*, 639 Fed. Appx. 459 (9th Cir. 2016) (internal quotation marks omitted) (citing *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014)).

8

9

10

11

12

13

Here, Dr. Weiss conducted two detailed evaluations and based his opinion on his clinical interviews, mental status examination, reviews of the medical record, and psychological testing. *See Garrison v. Colvin*, 795 F.3d 995, 1008 (9th Cir. 2014) (Check box forms completed by physicians that have significant experience with a patient and are based on numerous records are entitled to weight that unsupported and unexplained check box forms do not merit).

14

15

16

17

18

With respect to the ALJ's second reason, Dr. Weiss utilized objective measures such as clinical interviews and mental status examinations in forming his opinion, and there is no evidence that he relied largely on Plaintiff's self-reports. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (a psychiatrist's clinical interview and MSE are "objective measures" which "cannot be discounted as a self-report.").

19

20

21

22

23

As for the ALJ's third reason, a finding that a physician's opinion is inconsistent with the medical record may serve as a specific and legitimate reason for discounting it. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (An ALJ may give less weight to medical opinions that conflict with treatment notes).

24

25

1

2

3

4

5

6

Here, the ALJ found that the severe limitations assessed by Dr. Weiss were inconsistent with the "rather mild" symptomology Plaintiff reported to her treating providers during the same period, with largely intact mental status findings from the period at issue, and with the hearing testimony of medical expert Dr. Valette, who opined that Plaintiff would have work-related mental limitations broadly consistent with those ultimately assessed by the ALJ. AR 28, 57-66.

7

8

9

10

11

12

13

The ALJ found that Dr. Weiss' opinion was inconsistent with the results of several mental status examination from 2017 and 2018 showing that Plaintiff was doing better after an increase in her medication and was experiencing an exacerbation in her mental health symptoms due to holiday-related stress. AR 28, 1472, 1474, 1481, 1487. The ALJ also found that Dr. Weiss' opinion was inconsistent with "largely intact" mental status examinations conducted during the period at issue. AR 28, 605-31, 899-906, 907-19, 1104-1224, 1225-1424, 1425-1545.

14

15

16

17

18

19

20

21

22

23

The ALJ's conclusion represents a selective reading of the record, which indicates that Plaintiff routinely exhibited PTSD, anxiety and bipolar symptoms consistent with her allegations, and brief improvements in her mental health condition due to medication cannot serve as a specific and legitimate reason for discounting Dr. Weiss' opinion, especially given that these medications were not always effective, often caused side effects, and that Plaintiff was sometimes unable to take them since they caused interactions with her other medications. AR 706, 720-21, 750, 754, 910, 999, 1004, 1046, 1064, 1088, 1111, 1128, 1134, 1142, 1148, 1150, 1156, 1171, 1180, 1182, 1184, 1186, 1188, 1200, 1217; *see Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (the Court "cannot affirm . .

24

25

1  . 'simply by isolating a specific quantum of supporting evidence,' but 'must consider the

2  record as a whole, weighing both evidence that supports and evidence that detracts from

3  the [Commissioner's] conclusion.'"); *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir.

4  2014) (claimants who suffer from mental conditions may have symptoms that wax and

5  wane, with downward cycles, cycles of improvement, and mixed results from treatment);

6  20 C.F.R. §§ 404.1529(c)(3)(iv); 416.929(c)(3)(iv) (An ALJ must consider side effects of

7  medication taken for pain or other symptoms when assessing a claimant's allegations);

8  *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (evidence of medical treatment

9  *successfully* relieving symptoms can undermine a claim of disability) (emphasis added).

10        The fact that the opinions of examining psychologist Dr. Weiss, the only

11  psychologist who performed two in-person evaluations of Plaintiff, is inconsistent with

12  the opinions of non-examining medical expert Dr. Valette and non-examining state

13  agency consultants Gary Nelson, Ph.D. and Bruce Eather, Ph.D. does not, in itself,

14  constitute a specific and legitimate reason for discounting Dr. Weiss' opinions. *Revels v.*

15  *Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (the opinion of a non-examining physician

16  cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion

17  of an examining or treating physician) (internal citations omitted).

18        As for the ALJ's fourth reason, during Dr. Weiss' August 30, 2016 evaluation,

19  Plaintiff told him that she worked as a caregiver off and on between 2005 to 2009 and

20  worked as a dishwasher at a daycare for two or three months in 2013. AR 653. During

21  Dr. Weiss' June 26, 2018 examination, Plaintiff again described her work as a caregiver;

22  she also noted that she worked at a packaging company for two or three weeks in the

23

24

25

summer of 2017, but had to quit because she was having paranoid delusions about her co-workers. AR 1551.

The ALJ has not cited a specific inconsistency between Plaintiff's 2016 and 2018 statements to Dr. Weiss concerning her work history, nor is one apparent.

Accordingly, the ALJ has not provided specific and legitimate reasons for discounting Dr. Weiss' opinions.

2.  Dr. Bowerly

Psychologist Dr. Bowerly examined Plaintiff on October 28, 2016. AR 899-905. Dr. Bowerly's evaluation consisted of a clinical interview, a mental status examination, a review of the available records, and psychological testing. Based on the results of this examination, Dr. Bowerly opined that Plaintiff was unable to manage her own funds due to compromised intellectual functioning and poor judgment. AR 904. Dr. Bowerly added that Plaintiff demonstrated overall limitations in understanding, reasoning, persistence, attention, concentration, memory, social skills, and adaptive skills, secondary to borderline intellectual abilities and significant psychiatric impairments. AR 905.

However, Dr. Bowerly also stated that Plaintiff provided an "amplified" and "unreliable" report concerning her symptoms, and that while there was no evidence of overt malingering, he cautioned that Plaintiff's test scores "may be slightly deflated due to reduced effort." AR 901, 904.

The ALJ gave "significant weight" to Dr. Bowerly's opinion concerning Plaintiff's "amplified" and "unreliable" self-reports, reasoning that Dr. Bowerly's conclusion was supported by other inconsistent statements Plaintiff made during the period at issue. AR 27.

1    However, the ALJ only assigned "some weight" to Dr. Bowerly's assessment of

2    Plaintiff's work-related mental limitations, reasoning that: (1) it did not provide an opinion

3    concerning Plaintiff's precise functional limitations; and (2) Dr. Bowerly's finding that

4    Plaintiff had "borderline" intellectual functioning was inconsistent with IQ testing from the

5    same period which revealed no intellectual deficits, and Dr. Bowerly himself noted that

6    his test results were potentially a low estimate of Plaintiff's intellectual capacity due to

7    her reduced effort during the examination. AR 27.

8    Regarding the ALJ's first reason, the ALJ is responsible for translating and

9    incorporating clinical findings into a succinct residual functional capacity ("RFC").

10   *Rounds v Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). A finding that

11   a physician's opinion is too vague to be useful in making a disability determination can

12   serve as a specific and legitimate reason for discounting that opinion. *Ford v. Saul*, 950

13   F.3d 1141, 1156 (9th Cir. 2020) (holding that the ALJ reasonably found that the use of

14   words such as "limited" and "fair" in an opinion did not specific a claimant's precise

15   limitations and were "inadequate for determining RFC").

16   Here, Dr. Bowerly's opinion that Plaintiff would have "overall limitations" was

17   sufficiently vague concerning Plaintiff's precise functional limitations for the ALJ to

18   discount it on this basis.

19   While the ALJ has provided an additional specific and legitimate reason, the

20   Court need not assess whether this reasons were proper, as any error would be

21   harmless. *Presley-Carrillo v. Berryhill*, 692 Fed. Appx. 941, 944-45 (9th Cir. 2017) (citing

22   *Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008))

23   (although ALJ erred with regard to one reason he gave for discounting a medical

24

25

1   opinion, "this error was harmless because the ALJ gave a reason supported by the

2   record" to discount the opinion).

3          Accordingly, the ALJ has provided a specific and legitimate reason for

4   discounting Dr. Bowerly's opinion.

5          3.  <u>Dr. McKenna and Dr. Valette</u>

6          Medical experts Dr. McKenna and Dr. Valette testified at the hearing concerning

7   Plaintiff's physical and mental limitations, respectively. AR 41-56, 57-66. Dr. McKenna

8   and Dr. Valette both opined that Plaintiff would have work-related physical and mental

9   limitations broadly consistent with those ultimately assessed by the ALJ. *Id.*

10         The ALJ assigned "great weight" to Dr. McKenna's opinion concerning Plaintiff's

11  physical limitations, reasoning that: (1) Dr. McKenna reviewed the longitudinal medical

12  record; (2) Dr. McKenna gave a reasonable and persuasive explanation of his opinion;

13  (3) Dr. McKenna has an understanding of the Social Security disability program; (4) Dr.

14  McKenna's opinion is consistent with largely normal physical examination results in the

15  record; (5) Plaintiff was able to work several demanding physical jobs; and (6) Dr.

16  McKenna's opinion was consistent with the opinions of non-examining state agency

17  consultant Gordon Hale, M.D. and a March 2018 statement from treating physician Paul

18  Won, M.D. that Plaintiff was "medically stationary without any impairment" and could

19  continue her regular work. AR 26-27.

20         Plaintiff contends that because Dr. McKenna did not review her testimony, his

21  opinion did not account for Plaintiff's migraine-related limitations. Dkt. 12, p. 6. Dr.

22  McKenna reviewed the medical record, and specifically noted Plaintiff's long history of

23

24

25

1   migraine headaches when assessing her limitations. AR 42, 51-52. Accordingly, the ALJ
2   did not err in evaluating Dr. McKenna's opinion.

3       The ALJ also assigned "great weight" to Dr. Valette's opinion concerning
4   Plaintiff's mental limitations, offering similar reasons to the ones he cited in giving great
5   weight to Dr. McKenna's opinions. AR 27. For the reasons discussed above in
6   connection with Dr. Weiss' opinions, the ALJ's conclusions concerning Dr. Valette's
7   opinion are not supported by substantial evidence. *See supra* Section IV.A.1.

8           4.   Dr. Eather

9       On February 24, 2017, non-examining state agency consultant Dr. Eather offered
10  an opinion concerning Plaintiff's mental limitations. AR 143-45. Dr. Eather opined that
11  Plaintiff could understand and remember simple one to two step instructions and tasks
12  and might experience interruptions to work attendance at times, but could sustain
13  concentration and persistence sufficiently to perform routine tasks and maintain a
14  schedule within ordinary workplace allowances. AR 144. Dr. Eather further opined that
15  Plaintiff could perform work that requires no more than cursory interaction with the
16  general public or a small group of co-workers and could perform tasks that require no
17  more than occasional changes to tasks or settings, and which do not require more than
18  minimal independent planning or goal setting. AR 145.

19      The ALJ assigned "significant weight" to the opinions of the state agency
20  consultants, including Dr. Eather's, reasoning that they were consistent with the largely
21  intact mental status examinations in the record. AR 27.

22      For the reasons discussed above in connection with Dr. Weiss' opinions, this
23  conclusion is not supported by substantial evidence. *See supra* Section IV.A.1.

24

25

1    Further, Plaintiff argues that despite assigning significant weight to Dr. Eather's

2    opinion, the ALJ did not incorporate into the RFC Dr. Eather's opinion that Plaintiff can

3    perform work that requires no more than cursory interaction with the general public or a

4    small group of co-workers. Dkt. 12, p. 10.

5    To the extent that an ALJ accepts a physician's opinion, he or she must

6    incorporate the limitations contained in that opinion into the RFC. *See Magallanes v.*

7    *Bowen,* 881 F.2d 747, 756 (9th Cir. 1989). When the RFC is incomplete, the

8    hypothetical question presented to the vocational expert at step five is also incomplete,

9    "and therefore the ALJ's reliance on the vocational expert's answers [is] improper." *Hill*

10    *v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012).

11    In assessing Plaintiff's RFC, the ALJ found that Plaintiff could understand,

12    remember and carry out simple, routine and/or repetitive work instruction and tasks, but

13    not detailed or complex work instructions or tasks. AR 21. The ALJ did not incorporate

14    any of the limitations Dr. Eather assessed with respect to attention, concentration, social

15    interaction, or adaptation, and did not provide an explanation for not doing so.

16    Accordingly, the ALJ erred in evaluating Dr. Eather's opinion.

17    B.   Whether the ALJ erred in assessing Plaintiff's symptom testimony

18    Plaintiff contends that the ALJ erred by not providing clear and convincing

19    reasons for discounting her symptom testimony. Dkt. 12, pp. 12-18.

20    In weighing a Plaintiff's testimony, an ALJ must use a two-step process. *Trevizo*

21    *v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether

22    there is objective medical evidence of an underlying impairment that could reasonably

23    be expected to produce some degree of the alleged symptoms. *Ghanim v. Colvin,* 763

24

25

F.3d 1154, 1163 (9th Cir. 2014). If the first step is satisfied, and provided there is no

evidence of malingering, the second step allows the ALJ to reject the claimant's

testimony of the severity of symptoms if the ALJ can provide specific findings and clear

and convincing reasons for rejecting the claimant's testimony. *Id. See Verduzco v.*

*Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).

In discounting Plaintiff's symptom testimony, the ALJ reasoned that: (1) Plaintiff's

allegations concerning her physical and mental impairments were inconsistent with the

medical record; (2) Plaintiff worked after her alleged disability onset date; (3) Plaintiff

denied having frequent migraines during much of 2017 and 2018 and failed to

consistently seek treatment for this condition; (4) no acceptable medical source opined

that Plaintiff was disabled due to her physical impairments; and (5) Plaintiff's mental

health symptoms improved with treatment. AR 23-26.

Regarding the ALJ's first reason, inconsistency with the objective evidence may

serve as a clear and convincing reason for discounting a claimant's testimony.

*Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir.

1998). But an ALJ may not reject a claimant's subjective symptom testimony "solely

because the degree of pain alleged is not supported by objective medical evidence."

*Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) (internal quotation marks

omitted, and emphasis added); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995)

(applying rule to subjective complaints other than pain).

As for the ALJ's second reason, an ALJ may discount a claimant's allegations of

disabling limitations by contrasting that testimony with the claimant's continued work

activity after her alleged onset date. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792

(9th Cir.1997) (noting that an ALJ may weigh inconsistencies between a claimant's testimony and his or her work activity); *see also Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (finding that the ALJ properly discounted a claimant's subjective allegations when she worked after her alleged onset date and continued to seek employment).

Here, the ALJ found that Plaintiff had worked at several, physically demanding jobs between November 2017 and April 2018, and that while Plaintiff was injured following a work accident in December 2017, she recovered quickly and resumed working. AR 26, 1342, 1347, 1365, 1383, 1398, 1400, 1405, 1407. The ALJ's finding that Plaintiff could meet the physical demands of work after her alleged onset date is supported by substantial evidence. *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (An ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled).

However, Plaintiff's ability to work after her alleged onset date is not a clear and convincing reason for discounting Plaintiff's testimony concerning her mental impairments; Plaintiff left a job in the summer of 2017 because she was having paranoid delusions about her co-workers -- and, she left another job in March 2018 after three or four days due to her mental health symptoms. AR 1088-89, 1138, 1551.

In finding that no acceptable medical source ever assessed Plaintiff as being disabled due to her physical impairments, the ALJ has provided an additional clear and convincing reason for discounting Plaintiff's allegations about her physical impairments. The physicians who offered an opinion concerning Plaintiff's physical limitations opined that Plaintiff could perform either light or medium work. AR 55-57, 141-43.

1    Regarding the ALJ's fifth reason, for the reasons discussed above in connection

2    with Dr. Weiss' opinions, the ALJ's finding that Plaintiff's mental health impairments

3    improved with treatment is not supported by substantial evidence. *See supra* Section

4    IV.A.1.

5        As such, the ALJ has provided clear and convincing reasons for discounting

6    Plaintiff's testimony concerning her physical impairments, but has not provided such

7    reasons for discounting her testimony regarding her mental impairments.

8        C.    Whether the ALJ erred by not evaluating a lay witness statement

9        Plaintiff contends that the ALJ erred in not evaluating the observations of SSA

10   interviewer P. Randall and SSI facilitators Sue Newkirk and Robert Roper. Dkt. 12, p.

11   18.

12       On August 17, 2016, SSA employee P. Randall interviewed Plaintiff on the

13   phone, observing that Plaintiff's understanding and comprehension were limited. AR

14   278-79. SSI facilitator Sue Newkirk interviewed Plaintiff via telephone on December 16,

15   2016. AR 292-294. Ms. Newkirk recorded Plaintiff's statements concerning her

16   breathing difficulties, mobility issues, and the numbness in her hands and fingers. AR

17   292. SSI facilitator Robert Roper interviewed Plaintiff via telephone on March 16, 2017,

18   again observing Plaintiff's breathing difficulties. AR 322-23.

19       The ALJ did not cite the observations of Ms. Randall, Ms. Newkirk, or Mr. Roper

20   in evaluating the opinion evidence.

21       In evaluating the record, agency adjudicators may consider observations by

22   agency personnel. *See* Social Security Ruling ("SSR") 16-3p ("Other evidence that we

23   will consider includes statements from . . . any other sources that might have

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 15

1    information about the individual's symptoms, including agency personnel."); *see also* 20

2    C.F.R. § § 404.1529(c)(3), 416.927(c)(3) ("We will consider all of the evidence

3    presented, including . . . observations by our employees and other persons.").

4        Yet the ALJ is not required to "discuss all evidence presented". *Vincent on Behalf*

5    *of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted)

6    (emphasis in original). The ALJ must only explain why "significant probative evidence

7    has been rejected." *Id.*

8        Here, the observations of Ms. Randall, Ms. Newkirk, and Mr. Roper were based

9    upon brief encounters with Plaintiff, and were intended to gather basic information about

10   Plaintiff's condition, not to provide testimony about her functional limitations. *Crane v.*

11   *Shalala*, 76 F.3d 251, 254 (9th Cir. 1996) (finding that an individual must have "sufficient

12   contact" with the claimant during the period at issue "to qualify as a competent lay

13   witness.").

14       The ALJ did not err in declining to assess this evidence.

15       D.  <u>Remand for Further Proceedings</u>

16       "'The decision whether to remand a case for additional evidence, or simply to

17   award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664,

18   682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If

19   an ALJ makes an error and the record is uncertain and ambiguous, the court should

20   remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045

21   (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy

22   the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d

23   at 668.

24

25

1        The Ninth Circuit has developed a three-step analysis for determining when to

2   remand for a direct award of benefits. Such remand is generally proper only where

3        "(1) the record has been fully developed and further administrative

4        proceedings would serve no useful purpose; (2) the ALJ has failed to
         provide legally sufficient reasons for rejecting evidence, whether claimant
         testimony or medical opinion; and (3) if the improperly discredited

5        evidence were credited as true, the ALJ would be required to find the
         claimant disabled on remand."

6   *Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir.

7   2014)). The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each element

8   is satisfied, the district court still has discretion to remand for further proceedings or for

9   award of benefits. 80 F.3d 1041, 1045 (9th Cir. 2017).

10       Here, the ALJ erred in evaluating the opinions of Dr. Weiss, Dr. Eather and

11  Plaintiff's testimony concerning her mental health impairments. However, the ALJ's

12  decision is otherwise supported by substantial evidence, there remains significant doubt

13  concerning whether Plaintiff is disabled.. AR 1117, 1130, 1146, 1154, 1158, 1190, 1198,

14  1204, 1206, 1231; *see Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (courts

15  have the flexibility to remand for further proceedings when the record as a whole

16  creates "serious doubt" as to whether the claimant is disabled within the meaning of the

17  Social Security Act.).

1

CONCLUSION

2          Based on the foregoing discussion, the Court finds the ALJ erred when she found

3  Plaintiff to be not disabled. Defendant's decision to deny benefits is therefore

4  REVERSED and this matter is REMANDED for further administrative proceedings.

5          The ALJ is directed to re-assess the opinions of Dr. Weiss, Dr. Eather and

6  Plaintiff's testimony concerning her mental impairments on remand.

7                                          Dated this 12th day of March, 2021.

8

9

10                                         Theresa L. Fricke
                                           United States Magistrate Judge
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25